UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUG INGRAM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SOLKATRONIC CHEMICAL, INC. and JEFF R. HANNIS, and AIR PRODUCTS AND CHEMICALS, INC., a Delaware corporation, et al. <br><br> Defendants. | Case No.  O4CV287EA(C) |

**DEFENDANT SOLKATRONIC CHEMICAL, INC.'S
MOTION TO STRIKE DR. GAD'S SECOND EXPERT REPORT
<u>AND BRIEF IN SUPPORT</u>**

JOHN H. TUCKER, OBA #9110
ANDREW D. DOWNING, OBA #16414
KERRY R. LEWIS, OBA #16519
100 W. Fifth Street, Suite 400 (74103-4287)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:    918/582-1173
Facsimile:    918/592-3390

ATTORNEYS FOR DEFENDANTS, AIR
PRODUCTS AND CHEMICALS, INC. AND
SOLKATRONIC CHEMICAL, INC.

**DEFENDANT SOLKATRONIC CHEMICAL, INC.'S
MOTION TO STRIKE DR. GAD'S SECOND EXPERT REPORT**

### TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  Plaintiffs' Experts Repeatedly Asserted an Acute
Exposure Theory of Causation and Never Asserted
a Chronic-Exposure Theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. Solkatronic's Experts Prepared Their Reports in
Reliance on the Plaintiffs' Experts' Theory of Acute Exposure . . . . . . . . . . . 7

III. Dr. Gad's Second Report Advances and Relies Upon
a New Theory of Chronic Exposure Based on New
Affidavits from Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

IV. Permitting Dr. Gad's New Theory At this Late Date
Harms Solkatronic and this Court . . . . . . . . . . . . . . . . . . . . . . . . . . .12

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.  Dr. Gad's Second Report Cannot Be Used
to Correct Plaintiffs' Incomplete Initial Expert Reports . . . . . . . . . . . . . .13

II. Permitting Dr. Gad's Second Report Would Unfairly
Shift the Burden of Proof to Solkatronic While
Rewarding Plaintiffs' Failure To Develop Facts and
Opinions In a Timely Manner In Accordance With
this Court's Orders and the Federal Rules . . . . . . . . . . . . . . . . . . . . . . 16

III. Dr. Gad's Second Report Is Itself Incomplete In
Violation of FED. R. CIV. P. 26(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . 17

IV. Permitting Dr. Gad's Second Report Will Unfairly
Cause Additional Delay and Expense . . . . . . . . . . . . . . . . . . . . . . . . .18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# INDEX OF AUTHORITIES

**STATUTES & RULES**

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 16, 17, 19

Fed. R. Civ. P. 26(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . .. 13, 14, 16

Fed. R. Civ. P. 26(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Fed. R. Civ. P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**CASES**

*103 Investors I, L.P. v. Square D Co.,*
372 F.3d 1213, 1217 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . .14

*Cummins v. Lyle Industries,*
93 F.3d 362, 371 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . .17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579, 595, 113 S. Ct. 2786 (1993) . . . . . . . . . . . . . . . . . . . . 2

*Glastetter v. Novartis Pharmaceuticals Corp.,*
107 F. Supp.2d 1015, 1044 (E.D. Mo. 2000),
*aff'd*, 252 F.3d 986 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 17

*Hollander v. Sandoz Pharmaceuticals Corp,*
289 F.3d 1193, 1213 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . .16

*Keener v. United States,*
181 F.R.D. 639, 642 (D. Mont. 1998) . . . . . . . . . . . . . . . . . . . . . . . 15

*Long Term Capital Holdings v. United States,*
No. 3:01 CV 1290(JBA), 2003 WL21518555
(D. Conn. May 15, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mitchell v. Gencorp, Inc.,*
165 F.3d 778, 781 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . .16

*Phillips v. General Motors Corp.,*
No. Civ. A 99-3423, 2000 WL 1407896 (E.D. La. 2000) . . . . . . . . . . . . . .14

*Reed v. Binder,*
    165 F.R.D. 424, 429 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . .. . . . . .14

*Reid v. Lockheed Martin Aeronautics Co.,*
    205 F.R.D. 655, 662 (N.D. Ga. 2001) . . . . . . . . . . . . . . . . . . . . . . . .15

*Rodriguez v. Olin Corp.,*
    730 F.2d 491, 494 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . .14

*Salgado v. General Motors Corp.,*
    150 F.3d 735, 742 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . .15

*Siharath v. Sandoz Pharmaceuticals Corp.,*
    131 F. Supp. 2d 1347, 1358 (N.D. Ga. 2001),
    *aff'd,* 295 F.3d 1194 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . .17

*Walsh v. McCain Foods Ltd.,*
    81 F.3d 722, 727 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . .17


OTHER AUTHORITIES

Advisory committee notes to FED. R. CIV. P. 26(a)(2) . . . . . . . . . . . . . . . . . . . . 17

Comments to 1993 amendments to FED. R. CIV. P. 37 . . . . . . . . . . . . . . . . . . . .15

Emergency Planning and Community Right-to-Know Act Regulations,
    40 CFR 355, App. A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

MOORE'S FED. PRACTICE § 26.131[2], at p. 26-302 . . . . . . . . . . . . . . . . . . . . .15

## EXHIBITS

Exhibit 1:     Gad's Initial Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 10

Exhibit 2:     Hastings'Report on Charles Biddle . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Exhibit 3:     Hastings' Report on Obdulio Guerra . . . . . . . . . . . . . . . . . . . . . . . . 4

Exhibit 4:     Hastings' Report on Joshua Hinton . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Exhibit 5:     Hastings' Report on Tony Morris . . . . . . . . . . . . . . . . . . . . . . . . .4, 10

Exhibit 6:     Hastings' Report on Jennifer Shavers . . . . . . . . . . . . . . . . . . . . .6, 7

Exhibit 7:     Dr. Hastings' Report on Bruce Stewart . . . . . . . . . . . . . . . . . . . . .. . .10

Exhibit 8:     Harrison's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6, 7

Exhibit 9:     Banner's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Exhibit 10:    Pike's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Exhibit 11:    Carter's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 10

Exhibit 12:    Gad's Second Report . . . . . . . . . . . . . . . . . . . . . . . . . . . .throughout

Exhibit 13:    Stewart's Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Exhibit 14:    Morris' Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Exhibit 15:    Pike's Letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DOUG INGRAM, et al.,

                        Plaintiffs,

v.

SOLKATRONIC CHEMICAL, INC. and JEFF R. HANNIS,
and AIR PRODUCTS AND CHEMICALS, INC., a Delaware
corporation, et al.

                        Defendants.

Case No.  O4CV287EA(C)

**DEFENDANT SOLKATRONIC CHEMICAL, INC.'S
MOTION TO STRIKE DR. GAD'S SECOND EXPERT REPORT
AND BRIEF IN SUPPORT**

Defendant Solkatronic Chemical, Inc. ("Solkatronic") asks this Court to issue an Order striking Plaintiffs' Expert Report of Dr. Shayne Gad dated April 17, 2005, to the extent it raises and relies upon the new theory of causation that Plaintiffs' injuries may have been caused by repeated exposures to unspecific low levels of arsine on unspecified dates (*i.e.*, a chronic-exposure theory).  Dr. Gad's reliance on this new theory to criticize the reports of Solkatronic's experts is improper, and the appropriate remedy is to strike his report to the extent it relies on such a theory.

Plaintiffs bear the burden of proof in this case, and none of the Plaintiffs' experts have ever tendered an opinion regarding a chronic-exposure theory of causation.  To the contrary, Plaintiffs' experts have consistently opined that the Plaintiffs' injuries were caused by a single, acute exposure to arsine on July 11, 2001.  Solkatronic's experts cannot fairly be criticized for failing to consider a chronic-exposure theory of causation that was not asserted by Plaintiffs' experts.

1

Under the Federal Rules of Civil Procedure and this Court's Scheduling Orders, the Plaintiffs were required to tender a complete statement of all of their expert opinions, including the factual and scientific bases for such opinions. Having failed to do this with respect to a chronic-exposure theory of causation, the Plaintiffs may not now suggest and rely on such a theory under the cover of a "rebuttal" report.

Solkatronic offers the following brief in support of this Motion.

### INTRODUCTION AND BACKGROUND

In this case, the Plaintiffs claim that they suffered injuries caused by exposure to arsine gas from Solkatronic's facility in the Port of Catoosa. Although Plaintiffs make reference in their Complaint to the possibility of other releases, throughout the course of this litigation, Plaintiffs have consistently alleged that their injuries were caused by an accidental release of less than 60 pounds[1] of arsine on July 11, 2001. *See, e.g.,* Joint Status Report, filed herein on July 26, 2004.[2] Solkatronic denies that the Plaintiffs' alleged injuries were caused by any exposure to arsine from Solkatronic's facility.

At the Joint Status Conference, this Court and the parties agreed to a procedure in which thirteen of the almost two hundred Plaintiffs were chosen for an initial trial. Solkatronic also indicated at the Conference that it planned to file a motion to exclude Plaintiffs' expert witnesses under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595, 113 S. Ct. 2786 (1993). This Court set deadlines for, among other things, the exchange of expert reports by Plaintiffs, expert

---

[1] To put this amount in context, the amount of arsine released was well below the amount (100 pounds) that would even require notification to the U.S. Environmental Protection Agency. *See* Emergency Planning and Community Right-to-Know Act Regulations, 40 CFR 355, App. A.

[2] Plaintiffs specifically alleged a single, acute-exposure theory in their portion of the Joint Status Report.

2

reports by Solkatronic, and rebuttal expert reports by Plaintiff. These deadlines (and the cut-off for discovery) have now passed.[3]

As part of this process, Plaintiffs produced what they term as a "rebuttal" expert report by Dr. Shayne Gad that raises a new and significantly different opinion regarding causation. Under the applicable rules and case law, Dr. Gad's new causation theory cannot be raised for the first time as "rebuttal" testimony, and the appropriate remedy is to strike Dr. Gad's second report.

Each of Plaintiffs' expert witnesses opined in their initial expert reports that Plaintiffs' injuries resulted from a single, acute exposure on July 11, 2001. As a result, Solkatronic's expert reports concentrated solely on Plaintiffs' acute-exposure theory. In his second report, however, Dr. Gad suggests for the first time that Plaintiffs' injuries may have been caused by repeated exposures to unspecified low-levels of arsine on unspecified dates. In short, Dr. Gad suggests a new chronic-exposure theory of causation, rather than the single, acute-exposure theory previously stated in the initial expert reports provided by each of Plaintiffs' experts.

Having had more than three years to develop the theories of their case, and having submitted close to 200 expert reports consistently espousing a single, acute-exposure theory of causation, Plaintiffs cannot now submit new and different causation opinions under the guise of a "rebuttal" report. This is particularly true where, as here, Plaintiffs' new theories will result in unfair prejudice, additional costs, and further delay. For the

_____

[3] Solkatronic filed a Motion to Amend the Scheduling Order on May 2, 2005, and this Court recently entered an Order in response to that Motion. Solkatronic requested a new scheduling order primarily because, *inter alia*, Plaintiffs had failed to produce certain discovery and certain expert disclosures, expert depositions had not been yet been scheduled or taken, Plaintiffs had suggested the new theory of causation (as discussed in this Motion), and the deadline for dispositive motions was quickly approaching.

reasons set forth in this Motion, Dr. Gad's second report should be stricken to the extent it suggests or relies upon any theory of exposure other than the release on July 11, 2001.

I.    **Plaintiffs' Experts Repeatedly Asserted an Acute Exposure Theory of Causation and Never Asserted a Chronic-Exposure Theory.**

Beginning in December of 2002 and continuing through at least May of 2004, Plaintiffs produced almost 200 expert reports from Dr. Hastings.  In each of these virtually verbatim reports, Dr. Hastings concluded that each Plaintiff at issue was injured as a result of the arsine release on July 11, 2001.  Not once did Dr. Hastings opine that a Plaintiff was injured by any other releases of arsine from Solkatronic's facility.[5]

By order of this Court dated August 30, 2004, Plaintiffs' expert reports for the initial trial group of thirteen Plaintiffs[6] were due on January 3, 2005.  Plaintiffs designated Drs. Shayne Gad, Robert A. Harrison, and Richard J. Hastings as experts. Plaintiffs submitted reports from Drs. Gad and Harrison for the first time and, as expected, designated Dr. Hastings' previously produced reports as his expert reports in this case.

_____

[5] Plaintiffs originally filed their Complaint in state court.  They subsequently dismissed the state court action and filed this case in federal court.  Dr. Hastings produced these reports while the case was pending in state court.  In light of the large volume (nearly six binders worth) and repetitious nature of Dr. Hastings' reports, Solkatronic has not attached all of Dr. Hastings' reports to this Motion.  Instead, Solkatronic has attached a representative sampling of Dr. Hastings' reports that relate to individuals discussed in this Motion.  *See* Hastings Reports, attached respectively as Exs. 2, 3, 4, 5, 6 & 7.

[6] These Plaintiffs are Charles Biddle, Javier Cardenas, Linda Castro, Obdulio Guerro, Teresa Haggard, Josh Hinton, Doug Ingram, Karl Kharas, Alan Miller, Dale Patton, Bart Schnitzer, Jennifer Shavers and Joe Sumter.  Because Plaintiffs' counsel is unable to find Mr. Kharas, Magistrate Judge Cleary recently removed him from the initial trial group.

[8] These three Plaintiffs are Charles Biddle, Abdulio Guerra, and Jennifer Shavers.  Contrary to Dr. Gad, Drs. Hastings and Harrison conclude that Messrs. Biddle and Guerra were injured as a result of the arsine release on July 11, 2001.  Drs. Hastings and Harrison reach this conclusion even though both Plaintiffs were working some distance away from Solkatronic and were not in the path of the prevailing winds, experienced no immediate symptoms of exposure, reported no abnormal smells or tastes on July 11, 2001, and allege that their current (continuing nearly four years after the incident) symptoms (headaches, fatigue, memory loss) did not begin for weeks to months after the release.  Yet, despite the lack of evidence of acute exposure to Messrs. Biddle and Guerra on July 11, 2001, Plaintiffs' experts made no mention of a chronic-exposure theory.  *See* Hastings Report on Biddle and Guerra, attached respectively as Exs. 2 & 3. Ms. Shavers' claims are discussed *infra*.

4

Dr. Gad's initial report explained that he had been asked to "review the provided medical records for thirteen individuals reported as exposed to arsine gas *on July 11, 2001*." *See* Gad Initial Report, at p. 1, attached as Ex. 1 (emphasis added). He reported that he "reviewed the available medical records for *toxic* effects of arsine" and compared these records against the "established short and long term effects of arsine exposure at *toxic* levels, as well as the locations of the individuals *at the time of the accident*." *Id.* (emphasis added). Dr. Gad reported that he used a two-step process: first, considering whether "there was evidence of exposure of the individual at the time of and as part of the accident on July 11," and second, considering whether there is evidence of long term effects "of a significant arsine exposure." *Id.*

As to ten of the thirteen plaintiffs, Dr. Gad opined that these Plaintiffs were exposed to a "significant" or "sufficient" "amount of arsine at the time of the accident" on July 11, 2001, to cause Plaintiffs' "current medical problems." *Id.* at 2-4. As to three Plaintiffs, Dr. Gad found "no medical reports or clinical data objectively supporting . . . significant acute exposure." *Id.* Dr. Gad explained that he "cannot therefore render an opinion as to any of his [or her] currently self reported medical issues being related to arsine exposure *at the time of the accident*." *Id.* (emphasis added).[8]

In his report, Dr. Harrison also focuses on the July 11, 2001, release as the alleged cause of the Plaintiffs' injuries. Thus, Dr. Harrison writes: "In summary, the July 11, 2001, arsine gas release resulted in acute arsine intoxication among many individuals," and the "acute symptoms reported by the 13 plaintiffs are consistent with the known health effects of arsine reported in the medical and scientific literature following acute intoxication." *See* Harrison Report, at 5, attached as Ex. 8. With respect to the Plaintiffs'

claims of persistent health problems, Dr. Harrison states only that "these individuals continue to have chronic neurological problems that are *probably* caused by the arsine gas exposure" on July 11, 2001. *Id.* (emphasis added). Like Dr. Hastings, neither Dr. Gad nor Dr. Harrison opined that any Plaintiffs were injured by chronic or repeated exposures to arsine.

Plaintiffs' experts' opinions regarding plaintiff Jennifer Shavers are particularly noteworthy for purposes of this Motion. In his report, Dr. Hastings notes that Ms. Shavers admitted that she was not present at the Port of Catoosa on July 11, 2001,[9] and did not return to work at Solkatronic "for approximately two days following this event." *See* Hastings Report on Shavers, at p. 2, attached as Ex. 6. Ms. Shavers did report, however, that while working at Solkatronic she was evacuated or sequestered on several occasions when arsine alarms sounded prior to July 11, 2001. *Id.* at pp. 1-2.

Incredibly, however, notwithstanding Ms. Shavers report that she was not present on July 11, 2001, and notwithstanding her suggestion that she may have been exposed to arsine on other earlier dates, Dr. Hastings opines that "[i]n my medical opinion within a reasonable degree of medical certainty, Jennifer Gail Shavers, a 27-year old male [sic] did experience a toxic gas exposure on July 11, 2001" and has numerous medical problems (including headaches, chronic fatigue, reactive airway dysfunction, and

---

[9] Remarkably, Ms. Shavers is not the only one of the lead 13 Plaintiffs who self reports that she was not present at the time of the July 11, 2001, release. *See generally* Defendants' Motion for Summary Judgment and Brief in Support Regarding the Claims of Plaintiff Joshua Hinton, filed herein on September 27, 2004. As explained in Solkatronic's Motion for Summary Judgment, Josh Hinton was working with his father installing carpet on the morning of July 11, 2001. However, when he and his father reported to the hospital that evening, they both separately reported that they had *awoken* feeling sick that morning – well before the *afternoon* release that allegedly made them sick. In fact, Josh Hinton reported that he and his father left the Port and went home around 11 a.m., nearly two hours before the release. Nevertheless, *each* of Plaintiffs' causation experts, Drs. Gad, Harrison, and Hastings, opined that Josh Hinton has continuing medical problems as a result of exposure to arsine on July 11, 2001. *See* Gad's Initial Report, at p. 1, attached as Ex. 1; Harrison's Report, at p. 5, attached as Ex. 8, and Hastings' Report on Hinton, at p. 4, attached as Ex. 4.

depression) "*as a result of exposure to the toxic arsine gas on July 11, 2001.*" *Id.* at p. 4 (emphasis added). Similarly, Dr. Harrison opined that "[t]he medical records show that all 13 individuals [including Jennifer Shavers] had symptoms of acute arsine intoxication immediately following the July 11, 2001 incident," despite Ms. Shavers' plain admission that she was not present on that date. *See* Harrison Report, at p. 4, attached as Ex. 8.

To his credit, Dr. Gad concluded that "[t]here are no medical reports or clinical data objectively supporting Ms. Shavers having had significant acute exposure." *See* Gad's Initial Report, at p. 5, attached as Ex. 1. Thus, Dr. Gad stated that he "cannot therefore render an opinion as to any currently of her [sic] self reported medical issues being related to arsine exposure at the time of the accident." *Id.* For present purposes, however, what is significant is that, despite Ms. Shavers suggestion that she might have been exposed to arsine on several dates prior to July 11, 2001 (a suggestion, for the record, that Solkatronic absolutely disputes), *none* of Plaintiffs' experts, including Dr. Gad, opined that Ms. Shavers was injured on any date other than July 11, 2001, and certainly none opined that Ms. Shavers' (or any of the other 13 lead plaintiffs') alleged injuries were caused by repeated, low-level exposures to arsine.

## II.    Solkatronic's Experts Prepared Their Reports in Reliance on the Plaintiffs' Experts' Theory of Acute Exposure.

Solkatronic retained three experts, Drs. William Banner, Steven Pike and Dean Carter, to respond to Plaintiffs' expert reports. Drs. Banner, Pike, and Carter conducted research, reviewed evidence, employed methodologies, and prepared reports in response to the single, acute-exposure theory of causation set forth consistently in all of Plaintiffs' experts' reports. Drs. Banner, Carter, and Pike were not asked to and did not respond to a chronic-exposure theory because no such theory had been put forth by Plaintiffs' experts.

*See* Banner's Report, attached as Ex. 9; Pike's Report, attached as Ex. 10; and Carter's Report, attached as Ex. 11.

Collectively, Solkatronic's experts opined that there was no objective medical evidence to support the conclusion that any Plaintiff was toxically exposed to arsine on July 11, 2001, or that any Plaintiffs' injuries can reasonably be attributed to the July 11, 2001, release. *See id.* Among other things, Drs. Banner, Pike, and Carter explained that (1) there can be no diagnosis of acute arsine poisoning without evidence of hemolysis, including resulting red urine;[10] and (2) there can be no chronic or permanent injury of the sort alleged by the Plaintiffs from a single, non-acute, non-toxic exposure to arsine.

### III.    Dr. Gad's Second Report Advances and Relies Upon a New Theory of Chronic Exposure Based on New Affidavits from Plaintiffs.

On April 18, 2005, in accordance with this Court's Scheduling Order, Plaintiffs produced what they termed as a "rebuttal" report from Dr. Gad. *See* Gad's Second Report, attached as Ex. 12. In this report, after making general statements about arsine exposure, Dr. Gad writes:

> *The affidavits of employees suggested repeated and possible exposure to arsine after the initial event. The doses of arsine appear to have been sufficiently low as to not cause many of the expected effects of higher amounts of arsine, e.g., RBC [red blood cell] hemolysis, but clearly have caused continued ill-health among these individuals. The duration of exposure, individual differences in responsiveness, and total amount from the exposures would explain the continued ill health alleged by these employees.*

---

[10] Arsine passes easily through the lungs and into the blood stream. Once in the blood stream, arsine causes the break down of red blood cells. This is known as "hemolysis," and it results in the release from the red blood cells of heme (which is what gives the red blood cell its red color). The classic presentation of arsine poisoning includes a report of bright red urine resulting from the presence of heme in urine. The presence of heme (from ruptured red blood cells) in urine must be distinguished from the presence of whole red blood cells in the urine. In this case, a few Plaintiffs were found to have trace amounts of whole red blood cells in their urine. This is not at all unusual, and it is not evidence of arsine poisoning (or any other significant malady). For each of the nearly 200 Plaintiffs in this case, there are no medical records showing red urine, and in fact, there is not a single self report of red urine. *See* Banner's Report, at pp. 2-6, attached as Ex. 9; Pike's Report, at p. 13, attached as Ex. 10; Carter's Report, at p. 22, attached as Ex. 11.

8

*See id.* at p. 3 (emphasis added). Dr. Gad then proceeds to criticize Solkatronic's expert, Dr. Pike, for failing to consider the possibility that Plaintiffs' injuries are the result of these "suggested," "possible," repeated exposures to arsine. *Id.* Dr. Gad makes this criticism notwithstanding the fact that none of Plaintiffs' experts, Dr. Gad included, had suggested such a theory of causation in their earlier reports.

After receiving Dr. Gad's second report, Solkatronic requested and finally received from Plaintiffs' counsel, on April 27, 2005, the "affidavits of employees" to which Dr. Gad referred in his second report. Dr. Gad relied on affidavits from two Plaintiffs, Bruce Stewart and Tony Morris, who are not in the initial trial group of thirteen Plaintiffs. The affidavits of Stewart and Morris are identical from beginning to end, and both affidavits were executed on March 29, 2005, *after* Plaintiffs' experts' initial reports were filed. *See* Affidavits, attached as Exs. 13 & 14.

In these affidavits, Stewart and Morris aver that, "prior to July 11, 2001," while working at Solkatronic for "almost one (1) year," hard-wired alarms for arsine at Solkatronic's facility "went off numerous times on an almost daily occurrence," registering in the "most dangerous . . . red zone several times per day." *Id.* They further allege that "each time" they went to the Solkatronic's roof with a hand-held monitor "it registered in the dangerous level for arsine." *Id.*

As noted above, Dr. Gad writes in his second report that these affidavits "*suggest[]* repeated and *possible* exposure to arsine *after*[11] the initial event." *See* Gad's Second

_____

[11] The affidavits of Stewart and Morris allege that arsine alarms went off repeatedly in the year *prior* to July 11, 2001. Thus, these affidavits do not support Dr. Gad's suggestion that there is "clear" evidence of repeated exposures *after* July 11, 2001. *See* Stewart & Morris Affidavits, at ¶ 6, attached respectively as Exs. 13 & 14.

Report, at p. 3, attached as Ex. 12. From this "suggestion" of "possible" exposures (based on two Plaintiffs reporting that alarms went off with fantastic frequency), Dr. Gad concludes that exposures occurred *in fact* at "doses . . . sufficiently low as not to cause" the expected effects of acute exposure (*i.e.*, gross hemolysis), but at levels apparently sufficiently high for Dr. Gad to opine that these "suggested" "possible" exposures "*clearly* have caused continued ill-health among *these individuals*" (*i.e.*, Stewart and Morris). *Id.* (emphasis added).

Although Stewart and Morris are Plaintiffs in this case, they are not among the initial trial group of thirteen Plaintiffs. Thus, in his initial report, Dr. Gad offered no opinions at all regarding Stewart or Morris. *See* Gad's Initial Report, attached as Ex. 1.[12] Likewise, Solkatronic's experts offered no specific opinions regarding Stewart or Morris. *See* Banner's Report, attached as Ex. 9, Pike's Report, attached as Ex. 10, and Carter's Report, attached as Ex. 11. However, Dr. Gad uses the affidavits from Stewart and Morris (which were created after Solkatronic's experts served their reports) to criticize the opinions of Solkatronic's expert, Dr. Pike, with respect to the lead group of thirteen Plaintiffs. For example, Dr. Gad writes that Dr. Pike's opinions regarding a "lack of [clinical] findings [of arsine exposure] in the plaintiffs are based on acute, single exposure to arsine," despite the fact that it "is *certain* from evidence provided by the plaintiffs . . . that exposure to arsine continued after the July 11th incident." *See* Gad's Second Report, at p. 3, attached as Ex. 12. Similarly, Dr. Gad writes that "[o]verall, Dr. Pike refers to literature that describes the effects of arsine following an acute exposure,"

---

[12] Dr. Hastings has, however, offered opinions regarding Messrs. Stewart and Morris. In his reports, Dr. Hastings opines that these Plaintiffs "experience[d] a toxic arsine gas exposure on July 11, 2001." Dr. Hastings makes no mention of the possibility that either Stewart or Morris experienced chronic exposure to arsine. *See* Hastings' Reports on Morris & Stewart, attached respectively as Exs. 5 & 6.

but "he dose [sic] not consider in his report the facts that the individuals were repeatedly exposed and that the effects described by these individuals are characteristic of such chronic exposure." *Id.* at 4.

There are numerous problems with Dr. Gad's second report, including prominently how Dr. Gad can legitimately move *from* the "suggestion" of "possible" exposures based on reports of alarms prior to July 11, 2001 (not actual reports of arsine exposure) in identical affidavits from Stewart and Morris (created more than four years after the events they describe) *to* the statement that it is a "certain . . . that exposure continued after July 11" and that it is a "fact[]" that plaintiffs other than Stewart and Morris "were repeatedly exposed." *See* Gad's Second Report, at p. 3, attached as Ex. 12.

The question in this motion, however, is not whether Dr. Gad's opinions (in both his initial and his rebuttal reports) are reasonable; that question will be raised in a later *Daubert* motion. Instead, the question here is whether Dr. Gad's reliance on a chronic-exposure theory to criticize Solkatronic's experts should be stricken because neither he nor any of the Plaintiffs' other experts has ever opined – in conformity with the Federal Rules of Civil Procedure and this Court's Scheduling Orders – that the Plaintiffs' injuries were caused by chronic exposure to low levels of arsine. *To be perfectly clear, Solkatronic is not suggesting, and would not agree, that Dr. Gad's second report opines that any of the thirteen lead plaintiffs have suffered an injury caused by chronic or repeated exposure to arsine.* That opinion has not been stated by any of Plaintiffs' experts in any report (and certainly has not been stated in conformity with the requirements of Rule 26), and Solkatronic would strenuously object to the introduction of any such affirmative opinion by Plaintiffs.

This is what is somewhat odd about Dr. Gad's approach. Dr. Gad suggests that Stewart and Morris may have been injured by repeated exposure to arsine, and he opines that Dr. Pike's report with respect to thirteen *other* Plaintiffs is deficient because it fails to consider the possibility of chronic exposure. However, because neither Dr. Gad nor any of Plaintiffs' other experts have ever opined that the thirteen lead Plaintiffs have injuries caused by chronic arsine exposure, Dr. Gad should not be permitted to offer rebuttal testimony against Dr. Pike based on this new and different *theory* of causation.

**IV.    Permitting Dr. Gad's New Theory At this Late Date Harms Solkatronic and this Court.**

Allowing Dr. Gad's new theory of causation will cause harm to Solkatronic and this Court. If the report is permitted, Solkatronic's three experts will have to perform an evaluation of as-of-yet undisclosed facts using a different methodology than is used for an acute-exposure theory. As Dr. Pike explains, a chronic-exposure theory would require an analysis of vastly different information than an acute-exposure theory (an analysis that was not actually performed by Dr. Gad in his second report). *See* Letter from Dr. Pike dated May 16, 2005, attached as Ex. 15. To conduct this analysis and respond to Dr. Gad's improper (under Rule 26) criticism, Solkatronic would be required to expend significant additional amounts of time and money. Having already responded to the acute-exposure theory of causation consistently asserted by Plaintiffs' experts, Solkatronic should not have to expend additional time and money to respond to a new causation theory that is not only untimely, but is also not properly tendered and substantiated under Rule 26.

### ARGUMENT AND AUTHORITIES

This Court should strike Dr. Gad's second report for several reasons. First, Dr. Gad's second report cannot be used to correct the inadequacies of Plaintiffs' initial expert reports. It is neither a "rebuttal" report nor is it a permitted supplemental report under FED. R. CIV. P. 26(e)(1). Second, Dr. Gad's second report violates FED. R. CIV. P. 26(a)(2)(B) in that it raises a new theory of causation without providing the evidence or data needed to support it. Third, permitting Dr. Gad's second report would unfairly shift the burden of proof to Solkatronic while rewarding Plaintiffs' failure to develop the facts and theories of their case in a timely manner in compliance with this Court's schedule and the Federal Rules. Finally, permitting Dr. Gad's second report would unfairly cause additional delay and expense in this case. Solkatronic cannot respond to this new theory without taking additional time and incurring significant additional expenses to gather relevant information and to permit Solkatronic's experts conduct the appropriate review, analysis, and research necessary to respond to the Plaintiffs' unsupported (for purposes of Rule 26) *suggestion* of chronic exposure.

I.      **Dr. Gad's Second Report Cannot Be Used to Correct Plaintiffs' Incomplete Initial Expert Reports.**

This Court's Minute Order set out a three-tiered system for the exchange of expert reports. According to the Order, Plaintiffs were to provide their initial expert reports followed by expert reports from Solkatronic. Plaintiffs were then permitted to supply "rebuttal" expert reports. *See* Minute Sheet, filed herein on August 30, 2004. Dr. Gad's second report, although labeled a "rebuttal" report, in reality attempts to correct the incompleteness and inadequacy of Plaintiffs' initial expert reports by raising a new theory

13

of causation. Such a tactic turns this Court's Scheduling Order and the Federal Rules of Civil Procedure on its head. Dr. Gad's second report should therefore be stricken.

Pursuant to FED. RULE CIV. PROC. 26(a)(2)(B), Plaintiffs' initial expert reports provided on January 17, 2005 were required to "contain a *complete* statement of *all* opinions to be expressed *and* the basis and reasons therefore." (Emphasis added). "The test of a report is whether it was sufficiently complete, detailed, and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). On the other hand, "[a]n expert rebuttal report does exactly what it says: *it rebuts*, in the form of a complete statement of all the opinions expressed by the author, *the report of the opposing party's expert*." *Long Term Capital Holdings v. United S*tates, No. 3:01 CV 1290(JBA), 2003 WL 21518555, at *2 (D. Conn. May 15, 2003) (emphasis added).[13] It does not raise new theories. *See Phillips v. General Motors Corp.*, No. Civ. A 99-3423, 2000 WL 1407896 (E.D. La. 2000).[14]

Although Dr. Gad's report purports to "rebut" the opinions of Solkatronic's experts, it does so by introducing a new theory of causation that Solkatronic's experts have not addressed because, to this date, not one of Plaintiffs' experts has anywhere opined (and certainly not in conformance with Rule 26) that any of the 13 lead plaintiffs have injuries caused by repeated or chronic exposure to arsine. Any such opinion was required to be raised, explained, and properly supported in Plaintiffs' initial expert reports,

---

[13] This understanding of a "rebuttal" report is consistent with the longstanding concept of "rebuttal evidence." "Rebuttal evidence is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in [her] opponent's case-in-chief." *Rodriguez v. Olin Corp.*, 730 F.2d 491, 494 (5th Cir. 1991).

[14] This is clearly not a case where the "thrust" of the initial and rebuttal reports is the same. *See 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217 (10th Cir. 2004).

14

and certainly cannot be used to "rebut" Solkatronic's experts when it has *never* been properly offered as an opinion.

The appropriate remedy is to strike Dr. Gad's rebuttal report to the extent it relies on a new chronic-exposure theory. Pursuant to Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Under these Rules, "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *See Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *accord* Comments to 1993 amendments to Rule 37 (explaining that subpart (c) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a)).

Plaintiffs cannot excuse these shortcomings by contending that Dr. Gad's second report is "supplemental" report. Under FED. R. CIV. P. 26(e)(1), a party is under the duty to supplement an expert's report if "additional or corrective information has not otherwise been made known to the other parties during the discovery process." "[A]ny additional or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(1). In other words, "[a] party may not use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report." MOORE'S FED. PRACTICE § 26.131[2], at p. 26-302. *See also Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001).

Plaintiffs have no justifiable reason for not pursuing a chronic exposure theory in their initial reports. Plaintiffs clearly were aware of the possibility of this theory at the time their Complaint was filed, *see* Complaint, at ¶ 22, filed herein on April 2, 2004, but they did not pursue this theory during discovery and, in any event, did not develop it and assert it in their expert reports as required by Rule 26 and this Court's Scheduling Orders.

**II.     Permitting Dr. Gad's Second Report Would Unfairly Shift the Burden of Proof to Solkatronic While Rewarding Plaintiffs' Failure To Develop Facts and Opinions In a Timely Manner In Accordance With <u>this Court's Orders and the Federal Rules.</u>**

Dr. Gad's rebuttal report turns the burden of proof in this case – not to mention Rule 26 and this Court's scheduling Orders – on their head. It is the Plaintiffs – not Solkatronic – that have the burden of proof in this case. Among other things, this means that Plaintiffs must prove that their alleged injuries were caused, as they allege, by exposure to arsine. *See, e.g., Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999).

It is *not* Solkatronic's burden to prove the negative – *i.e.,* that Plaintiffs' alleged injuries were *not* caused by any such alleged exposure. Yet, this is exactly what Dr. Gad criticizes Solkatronic's expert, Dr. Pike, for failing to do. Dr. Gad opines that Dr. Pike's acute-exposure analysis is inadequate in this case because Dr. Pike fails to rule out the possibility that the plaintiffs were exposed to repeated, low-level doses of arsine. But it is not Dr. Pike's responsibility to suppose and respond to all possible theories of causation. Instead, it is Plaintiffs' responsibility – consistent with their burden of proof, Rule 26, and the scheduling Orders of this Court – to set forth a complete statement of all of their experts' theories of causation and the bases for those opinions. *See, e.g., Hollander v. Sandoz Pharmaceuticals Corp*, 289 F.3d 1193, 1213 (10th Cir. 2002);

16

*Glastetter v. Novartis Pharmaceuticals Corp.*, 107 F. Supp.2d 1015, 1044 (E.D. Mo. 2000), *aff'd*, 252 F.3d 986 (8th Cir. 2001); *Siharath v. Sandoz Pharmaceuticals Corp.*, 131 F. Supp. 2d 1347, 1358 (N.D. Ga. 2001), *aff'd*, 295 F.3d 1194 (11th Cir. 2002). Plaintiffs have not done this in any report (rebuttal or otherwise) with respect to a chronic-exposure theory of causation for any of the lead group of 13 Plaintiffs.

If Plaintiffs are permitted to use Dr. Gad's second report, Solkatronic will be in the untenable position of attempting to respond to criticism based on a new and unsubstantiated (for purposes of Rule 26) theory of causation. Solkatronic would have to attempt to do this without knowing the factual or scientific basis for Dr. Gad's bare suggestion that Plaintiffs' injuries may have been caused by chronic exposure to arsine. This outcome is not clearly not contemplated, or permitted, by Fed. R. Civ. P. 26 or this Court's Scheduling Order. In fact, this outcome is precisely what Rule 26 and this Court's Scheduling Orders are designed to avoid.

### III.    Dr. Gad's Second Report Is Itself Incomplete In Violation of FED. R. CIV. P. 26(a)(2)(B).

As noted above, FED. R. CIV. P. 26(a)(2)(B) requires expert reports to contain a "complete statement of all opinions and the basis and reasons therefore."[15] This Court has the discretion to strike the report and limit the testimony of the expert if the report fails to provide the basis for an opinion. *See, e.g., Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 727 (7th Cir. 1996); *Cummins v. Lyle Industries*, 93 F.3d 362, 371 (7th Cir. 1996).

The opinions in Dr. Gad's second report simply cannot be considered "complete." As noted above, Dr. Gad states that affidavits of two Plaintiffs "*suggest[]* repeated and

---

[15] The Advisory Committee admonishes that the report "must be detailed and complete," and that the disclosures be sufficiently detailed so as to avoid unfair surprise to the opposing party. FED. R. CIV. P. 26(a)(2) advisory committee's note (1993).

*possible* exposure to arsine *after* the initial event." *See* Gad's Second Report, at p. 3, attached as Ex. 12. From this "suggestion" of "possible" exposures (based on two Plaintiffs reporting that alarms went off with incredible frequency), Dr. Gad concludes that exposures occurred *in fact* at "doses . . . sufficiently low as not to cause" the expected effects of acute exposure (*i.e.*, hemolysis and hematuria), but at levels apparently sufficiently high for Dr. Gad to opine that these "suggested" "possible" exposures *"clearly* have caused continued ill-health among *these individuals"* (*i.e.*, Stewart and Morris). *Id.*

Dr. Gad's second report fails to provide any of the evidence or data that would be needed to make such jumps in logic. As Solkatronic's expert, Dr. Pike notes, Dr. Gad's second report raises a number of issues and questions that Dr. Gad did not explain. *See* Letter, dated May 16, 2003, attached as Ex. 15. Even the most basic questions were left unanswered. For example, when and where did the alleged releases occur? What was the frequency and duration of the releases? What were the concentration levels of the releases? Which Plaintiffs were allegedly exposed during which releases? At what levels? *See id.*

### IV. Permitting Dr. Gad's Second Report Will Unfairly Cause Additional Delay and Expense.

If permitted, Dr. Gad's rebuttal report will cause additional delay in these proceedings and cause significant additional expense to Solkatronic.

To respond to Dr. Gad's criticism, Solkatronic's three experts would be required to re-evaluate Plaintiffs' claims, medical records, and other evidence in light of an entirely new and different theory. As Dr. Pike makes clear in his affidavit, consideration of a chronic-exposure theory of causation requires a very different approach and

methodology than consideration of an acute-exposure theory. Substantial time would have to be expended by Solkatronic and its experts (resulting in significant costs) because the evaluation of the new theory would entail a new set of standards using different scientific methodology and literature than would be used for a single, acute exposure. Numerous additional facts would have to be discovered and considered. Solkatronic's experts would need to determine, among other things, if each Plaintiff in the trial group was subject to such exposures, the alleged amount each Plaintiff was exposed to, and whether such Plaintiffs could even have been exposed on various unspecified dates. The new information needed goes far beyond any discovery that could be completed even under the new Scheduling Order just recently entered by this Court. Here, where there is no legitimate basis for the Plaintiffs to have raised this theory so late in this litigation, there can be no good cause for causing such prejudice, delay, and additional expense.

## CONCLUSION

Dr. Gad's second report should be stricken to the extent it suggests and relies upon a chronic-exposure theory because no such theory has properly been tendered by Plaintiffs' experts in conformity with the burden of proof, Federal Rule of Civil Procedure 26, and this Court's Scheduling Orders. Plaintiffs have no good cause to raise this new opinion at this late stage, and permitting Dr. Gad's reliance on an untimely and unsubstantiated chronic-exposure theory of causation will unfairly cause further delay and additional expense.

WHEREFORE Defendant Solkatronic Chemical, Inc. asks this Court to issue its Order striking Plaintiffs' Second Expert Report of Dr. Shayne Gad to the extent it raises

19

the new theory of causation that Plaintiffs' injuries may have been caused by repeated exposures to unspecific low levels of arsine on unspecified dates.

BY: _____
JOHN H. TUCKER, OBA #9110
ANDREW D. DOWNING, OBA #16414
KERRY R. LEWIS, OBA #16519
100 W. Fifth Street, Suite 400 (74103-4287)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:     918/582-1173
Facsimile:     918/592-3390

ATTORNEYS FOR DEFENDANTS, AIR PRODUCTS AND CHEMICALS, INC. AND SOLKATRONIC CHEMICAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2005, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

COUNSEL FOR PLAINTIFFS:
Keith A. Ward
Fred E. Stoops
E. Diane Hinkle
RICHARDSON, STOOPS, RICHARDSON & WARD
6555 South Lewis, Suite 200
Tulsa, OK 74136-3414

_____
Kerry R. Lewis

20