UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DOUG INGRAM, et al.,

                Plaintiffs,

v.

SOLKATRONIC CHEMICAL, INC. and JEFF R. HANNIS, and AIR PRODUCTS AND CHEMICALS, INC., a Delaware corporation, et al.

                Defendants.

Case No.  O4CV287EA(C)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

**RHODES, HIERONYMUS, JONES, TUCKER & GABLE, P.L.L.C.**

BY:   /s/ Kerry R. Lewis
       JOHN H. TUCKER, OBA #9110
       ANDREW D. DOWNING, OBA #16414
       KERRY R. LEWIS, OBA #16519
       100 W. Fifth Street, Suite 400 (74103-4287)
       P.O. Box 21100
       Tulsa, Oklahoma 74121-1100
       Telephone:   918/582-1173
       Facsimile:   918/592-3390

       ATTORNEY FOR DEFENDANTS.

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ......................................................................... iii-v

INTRODUCTION ............................................................................................. 1

SUMMARY OF ARGUMENT ......................................................................... 2

STATEMENT OF MATERIAL FACTS ......................................................... 3

ARGUMENT AND AUTHORITIES ............................................................... 4

    PROPOSITION I:  Plaintiffs Cannot Meet Their Burden of Proof
    That Defendant Caused Compensable Injuries Without
    Competent Expert Testimony or Scientific Evidence ................................... 4

    PROPOSITION II:  Plaintiffs' Claim For Private Nuisance Fails
    Because Plaintiffs Are Not Possessors Of Land ........................................... 6

    PROPOSITION III:  Plaintiffs Cannot Maintain A Claim For
    Public Nuisance Because The Alleged Nuisance Was Not
    Continuance Or Recurring ............................................................................ 8

    PROPOSITION IV:  Plaintiffs Cannot Satisfy The Requirements
    Of Their Claims For Infliction Of Emotional Distress ............................... 12

        A.  Plaintiffs' Claim for Intentional Infliction of Emotional
        Distress Is Barred by the Statute of Limitations ............................... 13

        B.  Plaintiffs Cannot Recover for Negligent Infliction of Emotional
        Distress Without Proving a Related Physical Injury .......................... 13

    PROPOSITION V:  Plaintiffs Cannot Make a Claim For Medical
    Monitoring ................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Baltimore & P.R. Co. v. Fifth Baptist Church,*
    108 U.S. 317 (1883) ....................................................................................9

*Bocock v. Ashland Oil. Co.,*
    819 F. Supp. 530 (S.D. W. Va. 1993) ......................................................15

*Christian v. Gray,*
    2003 OK 10, 65 P.3d 591, 601-02 ...........................................................4

*Computer Publications, Inc. v. Welton,*
    2002 OK 50, 49 P.3d 732, 735 ...............................................................12

*Culwell v. Abbott Construction Co.,*
    506 P.2d 1191 (Kan. 1973)......................................................................10

*Ellington v. Coca Cola Bottling Co. of Tulsa,*
    1986 OK 45, 717 P.2d 109, 111 .............................................................13

*Gray v. Southern Facilities, Inc.,*
    183 S.E.2d 438 (S.C. 1971).......................................................................9

*Henry v. Dow Chemical Co.,*
    701 N.W.2d 684 (Mich. 2005)................................................................15

*Hinton v. Monsanto Co.,*
    813 So.2d 827 (Ala. 2001).......................................................................15

*In re Paoli Railroad Yard PCB Litigation,*
    916 F.2d 829, 837 (3rd Cir. 1990) ..........................................................15

*Kraszewski v. Baptist Medical Center of Oklahoma, Inc.,*
    1996 OK 141, 916 P.2d 241, 243 ...........................................................12

*Louderback v. Orkin Exterminating Co.,*
    26 F.Supp.2d 1298, 1310 (D. Kan. 1998)..........................................11, 12

*Matchen v. McGahey,*
    1969 OK 48, 455 P.2d 52, 57 ...................................................................4

*McMeakin v. Roofing & Sheet Metal Supply,*
    807 P.2d 288, 290 (Okla. App. 1990)..................................................13, 14

*McPherson v. First Presbyterian Church,*
1926 OK 214, 248 P. 561, 565 ...............................................................................9

*Meyer v. Lockformer Co.,*
2005 WL 1869656, at *3 (N.D. Ill. 2005) ...........................................................15

*Mitchell v. Gencorp Inc.,*
165 F.3d 778, 781 (10th Cir. 1999) .......................................................................4

*Morin v. City of Valdosta,*
231 S.E.2d 133 (Ga. App. 1976)...........................................................................9

*Nichols v. Mid-Continent Pipe Line Co.,*
1996 OK 118, 933 P.2d 272, 277 ..........................................................................7

*Nussbaum v. Lacopo,*
265 N.E.2d 762 (N.Y. 1970) ...............................................................................10

*Perez v. Metabolife Intern., Inc.,*
218 F.R.D. 262 (S.D. Fla. 2003)..........................................................................15

*Redland Soccer Club, Inc. v. Department of the Army,*
548 Pa 178, 196, 696 A.2d 137, 146 (1997)........................................................15

*Richardson v. J.C. Penney Co.,*
1982 OK CIV APP 77, 649 P.2d 565 ...................................................................14

*Seidenbach's Inc. v. Williams,*
1961 OK 98, 361 P.2d 185 ...................................................................................14

*Smicklas v. Sptiz,*
1992 OK 81, 846 P.2d 362, 367, n. 16..................................................................8

*Southeastern Liquid Fertilizer Co. v. Chapman,*
120 S.E.2d 651, 657 (Ga.App. 1961)...................................................................10

*State of Maryland v. Amerada Hess Corp.,*
350 F. Supp. 1060 (D. Md. 1972) ..........................................................................9

*Taylor v. Pepsi-Cola Co.,*
196 F.3d 1106, 1110 (10th Cir. 1999) ..................................................................12

*Twyman v. GHK Corp.,*
2004 OK CIV APP 53, 93 P.3d 51 .........................................................................4

iv

*Van Hoy v. Oklahoma Coca Cola Bottling Co.,*
    1951 OK 29, 235 P.2d 948 ......................................................................14

*Walley v. Patake,*
    74 N.W.2d 130 (Wis. 1956) ..................................................................10

*Wood v. Wyeth-Ayerst Laboratories, Division of American Home Products, AH,*
    82 S.W.3d 849 (Ky. 2002)......................................................................15


## Statutes/Rules

FED. R. CIV. P. 56.........................................................................................3

OKLA. STAT. tit. 12, § 95(3)................................................................2, 12, 13

OKLA. STAT. tit. 12, § 100..................................................................2, 12, 13

N.D. Local Civil Rule 56.1(b) ........................................................................3


## Other Authorities

ASSESSING COMMUNITY RISK FROM THE SUDDEN RELEASE
    OF A TOXIC GAS 451, 454...................................................................6

FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 424 .........6

RESTATEMENT (SECOND) OF TORTS § 821E, com. a ........................................7

RESTATEMENT (SECOND) OF TORTS 821F, comment g  ...................................9

RESTATEMENT (SECOND) OF TORTS § 821B, com. G.......................................11

58 AM.JUR.2D, *Nuisances* § 77 .....................................................................9

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUG INGRAM, et al.,<br><br>                   Plaintiffs,<br><br>v.<br><br>SOLKATRONIC CHEMICAL, INC. and JEFF R. HANNIS, and AIR PRODUCTS AND CHEMICALS, INC., a Delaware corporation, et al.<br><br>                   Defendants. | Case No.  O4CV287EA(C) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendants Solkatronic Chemical, Inc. ("Solkatronic") and Jeff R. Hannis ("Hannis") (collectively "Defendants"), pursuant to FED. R. CIV. P. 56, ask this Court to grant summary judgment in their favor on all claims asserted by Plaintiffs. Defendants offer the following brief in support of this Motion.

### INTRODUCTION

Plaintiffs claim they were exposed to and injured by a release of arsine on July 11, 2001. Plaintiffs allege various immediate and persistent physical injuries, as well as emotional distress. Plaintiffs seek damages under the theories of (1) public nuisance; (2) private nuisance, (3) negligence, (4) strict liability; (5) and intentional infliction of emotional distress. Plaintiffs also make claims for medical monitoring and punitive damages. Defendants deny Plaintiffs were injured by any arsine released from Solkatronic's facility.

## SUMMARY OF ARGUMENT

Summary Judgment should be granted on all of Plaintiffs' claims. First, summary judgment should be granted on Plaintiffs' claims for alleged physical injuries. To recover for physical injuries, Plaintiffs must present reliable expert testimony to prove general and specific causation (*i.e.*, that arsine can and did cause the injuries of which Plaintiffs complain). By order dated December 28, 2005 (Docket #119), this Court held that the specific causation testimony of the Plaintiffs' experts is not admissible under Fed. Rule of Evid. 702. Additionally, this Court recognized that Plaintiffs must present reliable, scientific evidence of dose. None of Plaintiffs' experts have offered any such evidence. Accordingly, Plaintiffs' claims for personal injury cannot proceed.

Second, Plaintiffs' nuisance claims fail as a matter of law. Plaintiffs cannot bring a private nuisance claim because Plaintiffs were not the owners or possessors of any real property allegedly affected by the arsine release. Likewise, Plaintiffs' public nuisance claim fails because the alleged public nuisance (*i.e.*, the arsine release) was not recurring or continuous, and therefore cannot be considered a public nuisance.

Third, summary judgment should be granted on Plaintiffs' claims for "emotional distress." By order dated November 10, 2005 (Docket #115), this Court held that Plaintiffs' claim for intentional infliction of emotional distress is a new claim not protected by the Oklahoma savings statute, OKLA. STAT. tit. 12, § 100. Accordingly, that claim is barred by the statute of limitations, OKLA. STAT. tit. 12, § 95(3). To the extent Plaintiffs seek to recover for "emotional distress" caused by Defendants' alleged negligence, they are required under Oklahoma law to first prove that they suffered a physical injury as a result of the alleged negligence. As noted above, Plaintiffs failed to

2

proffer sufficient evidence to establish that their alleged physical injuries were caused by the arsine release.  Accordingly, Plaintiffs' claims for emotional distress fail.

Fourth, summary judgment should be granted on Plaintiffs' claims for medical monitoring.  Oklahoma appellate courts have not recognized a medical monitoring remedy.  Even if this Court were to predict that Oklahoma would recognize such a remedy, Plaintiffs have failed to proffer any expert testimony – and such testimony is required – to establish that Plaintiffs experienced a "significant" exposure to arsine, that they have a significantly higher risk of contracting a particular, future disease than the general population, and that medical monitoring will be beneficial to Plaintiffs. Therefore, Plaintiffs' claims for medical monitoring should be dismissed.

For these reasons, this Court should grant Summary Judgment in favor of Defendants on all of Plaintiffs' claims.

## STATEMENT OF MATERIAL FACTS

Pursuant to FED. R. CIV. P. 56 and N.D. Local Civil Rule 56.1(b), Defendants submit the following statement of material facts in support of their Motion for Summary Judgment:

1.      Plaintiffs have no admissible expert testimony that their alleged personal, physical injuries were caused by the arsine release.  *See* 12/28/05 Order and Opinion, at 20 (Docket #119).

2.      Plaintiffs' experts have no evidence of the Plaintiffs' actual levels of exposure to arsine. *See* 12/28/05 Order and Opinion, at 20 (Docket #119).

3

3.      With the exception of one Plaintiff (Tamela Humphrey), there is no evidence that any of the Plaintiffs were at home or other places in which they had ownership interest at the time of the July 11, 2001 incident.

4.      Plaintiffs have no evidence that the arsine released on July 11, 2001 reached, or even could have reached, Tamela Humphrey's home.  See Bird's Eye Map of Port of Catoosa and Ms. Humphrey's home, attached as Ex. 1.

5.      Plaintiffs have no evidence of a "public nuisance".  Plaintiffs do not have sufficient evidence from which a reasonable jury could conclude that Solkatronic had recurrent arsine releases, and they have no evidence whatsoever that any alleged releases (other than the release on July 11, 2001) resulted in any arsine leaving Solkatronic's property and/or in any adverse effects on the public.

6.      None of the expert witnesses ever opined or testified that Plaintiffs need medical monitoring.

## ARGUMENT AND AUTHORITIES

### PROPOSITION I:

**PLAINTIFFS CANNOT MEET THEIR BURDEN OF PROOF
THAT DEFENDANTS CAUSED COMPENSABLE INJURIES
WITHOUT COMPETENT EXPERT TESTIMONY OR SCIENTIFIC EVIDENCE**

To recover for alleged personal injuries, Plaintiffs in a toxic tort case such as this one must present reliable, scientific evidence of general and specific causation.  *See* 12/28/05 Opinion and Order at 3; *accord Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *see also Christian v. Gray*, 2003 OK 10, 65 P.3d 591, 601-02 (citing *Matchen v. McGahey*, 1969 OK 48, 455 P.2d 52, 57); *Twyman v. GHK Corp.*, 2004 OK CIV APP 53, 93 P.3d 51.  By the 12/28/05 Order and Opinion, this Court excluded all of

4

the specific causation testimony offered by Plaintiffs. *See* 12/28/05 Opinion and Order at 37 (excluding causation testimony of Drs. Hastings and Harrison and noting that Dr. Gad has withdrawn all specific causation opinions). *See* Material Fact No. 1. Accordingly, summary judgment should be granted on Plaintiffs' claims for physical injuries.

Additionally, this Court recognized that, under the established law in this Circuit, Plaintiffs are required to present reliable, scientific evidence of dose. "A plaintiff seeking to succeed in a toxic tort case must demonstrate that he or she experienced exposure at a rate sufficient to cause injury." 12/28/06 Order and Opinion at 20. As the Tenth Circuit explained in *Mitchell v. Gencorp, Inc.*, 165 F.3d 778 (10th Cir. 1999):

> It is well established that a plaintiff in a toxic tort case **_must_** prove that he or she was exposed to and injured by a harmful substance manufactured by the defendant . . . . In order to carry this burden, a plaintiff **_must_** demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover.
> . . .
> We believe a plaintiff **_must_** prove level of the exposure using techniques subject to objective, independent validation in the scientific community. . . **_At a minimum_**, the expert testimony should include a description of the method used to arrive at the level of exposure and scientific data supporting the determination

*Id.* at 781 (internal citation omitted) (emphasis added); 12/28/06 Order and Opinion at 20. Plaintiffs have failed to develop any such evidence. They have not offered *any* estimations of the doses to which the various Plaintiffs might have been exposed, and they certainly have not done so using a scientific method and data "subject to objective, independent validation in the scientific community."

At the *Daubert* hearing, Plaintiffs seemed to be aware of their failure on this critical issue, and they attempted to get Defendants' expert, Dr. Pike, to provide testimony regarding dose. Plaintiffs also led their own experts to testify that it would be

5

impossible and unethical to reenact the events of July 11, 2001. Although it is undoubtedly true that the events of July 11, 2001, could not (and should not) be reenacted, it is plainly incorrect to suggest (as Plaintiffs have done) that it is impossible to obtain scientific estimates of the direction, duration, and concentration of the arsine release. As the Federal Reference Guide on Toxicology explains, "when direct measurements cannot be made, exposure can be measured by mathematical modeling, in which one uses a variety of physical factors to estimate the transport of the pollutant from the source to the receptor." FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 424. In fact, Dr. Gad's files contained an article describing in detail how to model a release of, coincidentally, arsine. *See* John Lowe *et al*, *Assessing Community Risk from the Sudden Release of a Toxic Gas* 451, 454, attached as Ex. 2.

Plaintiffs had more than three years to develop expert testimony in support of their claims. For whatever reason, Plaintiffs failed to develop any expert testimony regarding the dose to which Plaintiffs might have been exposed. *See* Material Fact No. 2. Without such evidence, Plaintiffs cannot establish their right to recover for physical injuries from the release of arsine. Accordingly, this Court should grant summary judgment on all of the Plaintiffs' claims for personal injury.

**PROPOSITION II:**

**PLAINTIFFS' CLAIM FOR PRIVATE NUISANCE FAILS
BECAUSE PLAINTIFFS ARE NOT POSSESSORS OF LAND**

Under Oklahoma law, the class of persons who may bring a private nuisance cause of action consists only of those who hold a legal interest in property affected by the alleged nuisance. With one exception (discussed below), there is no evidence that any of the Plaintiffs owned a legal interest in the property allegedly affected by the arsine

6

release.  Accordingly, Plaintiffs may not maintain a cause of action for private nuisance against Defendants.

Plaintiffs in a private nuisance claim must satisfy the conditions, adopted by Oklahoma, found in the Restatement (Second) of Torts.  In *Nichols v. Mid-Continent Pipe Line Co.*, 1996 OK 118, 933 P.2d 272, the Oklahoma Supreme Court adopted § 821E of the Restatement (Second) of Torts to determine whether the plaintiffs fell within the class of claimants who may bring an action for private nuisance.  *Id.* at 277 and n. 14. Section 821E restricts the class of persons who may sue for private nuisance to "possessors of the land," "owners of easements and profits in the land," and "owners of nonpossessory estates in the land that are detrimentally affected by interferences with its use and enjoyment."  RESTATEMENT (SECOND) OF TORTS § 821E.  As comment a explains, "[t]he liability for private nuisance exists only for the protection of persons having 'property rights and privileges,' that is, legally protected interests, in respect to the particular use or enjoyment that has been affected."  *Id.* § 821E, com. a.

In this lawsuit, there is no evidence that any of the Plaintiffs, with the exception of Plaintiff Tamela Humphrey, have a legally protected interest in the property allegedly affected by the arsine release on July 11, 2001.  Accepting Plaintiffs' theory as true for the purposes of this argument only, the released arsine traveled to properties within the Port of Catoosa.  There is no evidence, however, that Plaintiffs have any legal rights in these properties.  To the contrary, to Defendants' knowledge, all but one of the Plaintiffs were employees, independent contractors, or visitors at facilities in the Port of Catoosa at the time of the release.  *See* Material Fact No. 3.  Because Plaintiffs do not fit within the

class of claimants who can bring a private nuisance cause of action, this Court should grant summary judgment on Plaintiffs' claim for private nuisance.

With regard to Plaintiff Humphrey, Plaintiffs have presented no reliable, scientific evidence that the arsine did (or even could have) traveled to this Plaintiff's property seven miles to the northeast of Solkatronic's facility in sufficient quantities to even be detectable (let alone aggravating or injurious).   *See* Material Fact No. 4. Accordingly, summary judgment should likewise be granted with regard to her claims.

## PROPOSITION III:

### PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR PUBLIC NUISANCE BECAUSE THE ALLEGED NUISANCE WAS NOT CONTINUOUS OR RECURRING.

A claim for public nuisance requires Plaintiffs to establish a recurring or continuous event.  Since the release of arsine at Solkatronic's facility was a one-time event, it cannot constitute a public nuisance.  Accordingly, summary judgment should be granted on this claim.

Although there are few Oklahoma cases involving public nuisance, Oklahoma appellate courts have adopted the national common-law norms for nuisance that are set forth in the Restatement (Second) of Torts.  *See, e.g., Smicklas v. Sptiz*, 1992 OK 81, 846 P.2d 362, 367, n. 16; *Nichols v. Mid-Continent Pipe Line Co.*, 1996 OK 118, 933 P.2d 272.  The Restatement discusses the requirement of the duration or frequency needed as to the invasion or interference on nuisance, as follows:

> It is often said by the courts and commentators that in order to constitute a nuisance the interference must continue or recur over some period of time. These statements usually are true for the particular facts or issue giving rise to them.  Significant harm is necessary for a private nuisance or to a private action for a public nuisance and continuance or recurrence of the interference is often necessary to make the harm significant.  Likewise, if the harm was

not foreseeable in the first instance, some continuance or recurrence may be required to establish the defendant's intent to invade the plaintiff's interests or his negligence regarding those interests.   So also, the duration or frequency of the invasion is a factor to be considered in determining the gravity of the harm in comparison with the utility of the conduct of the defendant.   Finally, the suit frequently is one for injunction against the continuance of the nuisance, and some continuance or recurrence is normally required as a basis for the injunction.

RESTATEMENT (SECOND) OF TORTS 821F, comment g.[1]  *See also* 58 AM.JUR.2D, *Nuisances* § 77 (to constitute a nuisance, there must be a continuousness or a recurrence of the acts by which it is created).[2]

Other jurisdictions have applied the continuous or recurring requirement before finding that a nuisance exists.  For example, in *Morin v. City of Valdosta*, 231 S.E.2d 133 (Ga. App. 1976), the court stated that:

The whole idea of nuisance is that of either a continuous or regularly repetitious act or condition.  The appellant alleged two separate and distinct tortuous incidents occurring approximately three months apart. Therefore, in his complaint he showed a lack of the continuity or repetition necessary for a finding of nuisance.

*Id.* at 136.[3]  Likewise, after a single gas release at a chemical plant, the Georgia Court of

---

[1]    The Restatement indicates that a single event that causes significant harm may constitute an exception to the requirement that there be a recurring and/or continuous event.  RESTATEMENT (SECOND) OF TORTS § 821F, comment g.  As noted above, Plaintiffs cannot establish they suffered from personal, physical injuries from the release, and therefore, Plaintiffs cannot fit their public nuisance claim into a "significant harm" exception.

[2]    Oklahoma has also cited with approval the long-standing definition on this question issued by the United States Supreme Court:

In an action at law, damages may be recovered against a person who maintains a nuisance which renders the ordinary use and occupation of property uncomfortable to its owner; and if the cause of the annoyance and discomfort be continuous, equity will restrain it.

*Baltimore & P.R. Co. v. Fifth Baptist Church*, 108 U.S. 317 (1883); *McPherson v. First Presbyterian Church*, 1926 OK 214, 248 P. 561, 565.

[3]    *See Gray v. Southern Facilities, Inc.*, 183 S.E.2d 438 (S.C. 1971) ("The general rule is that the maintenance of a nuisance implies continuity of action over a period of time."); *State of Maryland v. Amerada Hess Corp.*, 350 F. Supp. 1060 (D. Md. 1972) ("It has been said that the recurrence or continuance of the invasion is characteristic of nuisance, and that the doctrine of nuisance as developed by American courts contemplates a continuing damage rather than an isolated invasion of the plaintiff's interests.  A review of the

9

Appeals in *Southeastern Liquid Fertilizer Co. v. Chapman,* 120 S.E.2d 651 (Ga.App. 1961) held that "[a] single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated." *Id.* at 657.

In this lawsuit, almost all Plaintiffs claim that they suffered injuries caused by an acute exposure to arsine gas from Solkatronic's facility in the Port of Catoosa. Accordingly, these Plaintiffs cannot bring a claim for public nuisance, and summary judgment should be granted to Defendants on this claim.

Three Plaintiffs, Jennifer Shavers, Bruce Stewart and Terry Morris, allege that there were other instances of alarms and evacuations at Solkatronic's facility before and/or after July 11, 2001 while they worked there as independent contractors.[4] These alarms, however, establish nothing. The Plaintiffs have presented no evidence that arsine was actually released, or, if it was, in what quantities, during these alleged alarms and evacuations. The Plaintiffs have presented no evidence regarding how or why the alarms

---

Maryland cases involving nuisances discloses that each case wherein a nuisance was found to exist contained the element of an ongoing phenomenon consisting of some recurrent act or acts and/or a continuous condition.); *Nussbaum v. Lacopo,* 265 N.E.2d 762 (N.Y. 1970) ("Nuisance imports a continuous invasion of rights, and the occasional "once or twice a week" errant golf ball that was found on plaintiff's property does not constitute sufficient impairment of plaintiff's rights."); *Walley v. Patake,* 74 N.W.2d 130 (Wis. 1956) ("However, there could not possibly be a valid determination of liability for nuisance in a situation as here unless there was a charge and showing that the condition had been maintained over an unreasonable period of time."); *Culwell v. Abbott Construction Co.,* 506 P.2d 1191 (Kan. 1973) ("[T]he undisputed evidence shows that the "chalk line" had been in its position across the sidewalk only a short period of time during the day in which the plaintiff was injured. In a number of cases we have held that one of the requisites of a nuisance is that it has been in existence for some period of time rather than being an isolated instance of a temporary nature. Frequency, continuity and duration are distinguishing factors to be considered in determining whether a nuisance exists.").

[4]     Plaintiffs Stewart and Morris originally submitted almost identical affidavits in which they testified under oath that red light alarms and hand-held monitors showed arsine releases "every day" before and after the July 11, 2001 incident. *See* Affidavits of Terry Morris and Bruce Stewart, attached as Exs. 3 & 4. At their deposition, however, Mr. Morris testified that he never heard any alarms in the room he was working in (Terry Morris Depo. at p. 62, lns. 15-19, attached as Ex. 5), he never saw a red light (*id.* at p. 65, ll. 11-13), and he used the hand held monitors after the July 11, 2001 incident in October of 2001 (*id.* at p. 17, ll. 1-13) even though there was no arsine production at that time. *See* 10/5/01 Letter from Mr. Joseph, attached as Ex. 6.  Mr. Stewart testified that he saw red lights on the alarm system "in the new area on the north side" and in the scrubber room after July 11, 2001, once again when no arsine was in production. *See* Bruce Morris Depo. at 78, l. 12 – p. 79, l. 5, attached as Ex. 7 & 10/5/01 Letter, attached as Ex. 6.

might sound, including what the alarms measure, what areas the alarms monitor, the dates on which the alarms sounded, the sensitivity of the alarms, and/or whether there were false alarms. Nor have Plaintiffs presented any evidence of a connection between these alarms and evacuations and their alleged injuries. *See* Material Fact No. 5.

Even if the evidence of alarms were considered to be evidence of recurrent arsine releases at Solkatronic's facility, there is still no evidence that any of these alleged releases (other than the release on July 11, 2001) caused any "public" nuisance. For example, even if the testimony of Plaintiffs Shavers, Morris and Stewart is credited as evidence of an arsine release, there is no evidence that any such arsine left the Solkatronic's property and/or interfered with any "public right." As contract workers at Solkatronic's facility, Plaintiffs Shavers, Morris and Stewart have no standing to assert that these alleged events constitute a "public" nuisance.

"A public right is one common to all members of the general public." RESTATEMENT (SECOND) OF TORTS § 821B, com. g. The Restatement provides the following illustration:

> [T]he pollution of a stream that merely deprives fifty or a hundred lower riprarian owners of the use of the water for purposes connected with their land does not for that reasons alone become a nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community the right to fish it becomes a public nuisance.

*Id.* In *Louderback v. Orkin Exterminating Co.*, 26 F.Supp.2d 1298 (D. Kan. 1998), the plaintiff argued that he could make a claim public nuisance because the defendant had contaminated a church that was permissively used by local community groups. The court found that there was no interference with a public right: "A claim of public nuisance is

based on infringement of the rights of the state or community at large as opposed to the rights of an individual." *Id.* at 1310.

There is no evidence that any of the alleged alarms and evacuations (other than on July 11, 2001) involved an actual release of arsine or, even assuming such a release, that it affected anyone outside Solkatronic's facility, much less the public. *See* Material Fact No. 5. Accordingly, the allegations of chronic releases by these three Plaintiffs cannot support a claim for public nuisance, and summary judgment should be granted.

## PROPOSITION IV:

## PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF THEIR CLAIMS FOR INFLICTION OF EMOTIONAL DISTRESS.

Plaintiffs assert an independent cause of action the intentional infliction of emotional distress and also seek damages for negligent infliction of emotional distress.[5] *See* Complaint, at ¶¶ 25, 42-45 (Docket #1). Plaintiffs cannot recover for emotional distress under either theory as a matter of law. Plaintiffs cannot pursue a claim intentional infliction of emotional distress because this Court, by order dated November 10, 2005 (Docket #115), held that Plaintiffs' claim for intentional infliction of emotional distress is a new claim not protected by the Oklahoma savings statute, OKLA. STAT. tit. 12, § 100. The claim is therefore barred by the statute of limitations, OKLA. STAT. tit. 12, § 95(3).[6] To the extent Plaintiffs seek damages for negligent infliction of emotional distress, the claim still cannot survive because Plaintiffs are unable to show a physical

---

[5] Negligent infliction of emotional distress is not an independent tort under Oklahoma law. *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999); *Kraszewski v. Baptist Medical Center of Oklahoma, Inc.*, 1996 OK 141, 916 P.2d 241, 243.

[6] Even if this claim somehow survives the limitations bar, Plaintiffs cannot satisfy the elements of "extreme outrage" or "severe emotional distress." *See Computer Publications, Inc. v. Welton*, 2002 OK 50, 49 P.3d 732, 735.

injury from which the emotional distress manifested. Accordingly, summary judgment should be granted on these claims.

### A. Plaintiffs' Claim for Intentional Infliction of Emotional Distress Is Barred by the Statute of Limitations.

As this Court previously ruled in its 11/10/05 Order and Opinion (Docket # 108) on Defendant Hannis' Motion to Dismiss, Oklahoma's two-year limitations period, OKLA. STAT. tit. 12, § 95(3) bars Plaintiffs' claim for intentional infliction of emotional distress. Plaintiffs filed this lawsuit on April 2, 2004 – almost three years after the date of the incident  As this Court explained, "[b]ecause plaintiffs did not include the claim in their original state court pleading, it does not constitute a substantially similar cause of action for the purposes of the savings statute." 11/10/05 Order and Opinion at 6. Therefore, the savings statute, OKLA. STAT. tit. 12, § 100, does not apply, and Plaintiffs' claim for intentional infliction of emotional distress is time-barred.

### B. Plaintiffs Cannot Recover for Negligent Infliction of Emotional Distress Without Proving a Related Physical Injury.

Under Oklahoma law, a claim for negligent infliction of emotional distress is conditioned upon the manifestation of a physical injury to the plaintiff. The emotional distress must be "connected to some manifestation of physical suffering to [the] plaintiff himself." *McMeakin v. Roofing & Sheet Metal Supply*, 807 P.2d 288, 290 (Okla. App. 1990). "Recovery does not depend upon physical impact or the nature of the tortious conduct, but on the nature of the results." *Id.* at 290 (citing *Ellington v. Coca Cola Bottling Co. of Tulsa*, 1986 OK 45, 717 P.2d 109, 111).

For example, a claim for negligent infliction of emotional distress was available for a man who suffered from bleeding ulcer that his physician opined was a result of an

13

incident in which his car brakes went out while going down a mountain. *See Richardson v. J.C. Penney Co.*, 1982 OK CIV APP 77, 649 P.2d 565. On the other hand, his wife as a passenger in the car could not recover for her resulting nervous tension. *Id.* Likewise, a plaintiff who watched his house burn down could not recover for emotional distress even though his physician believed the man suffered a heart attack from stress a month after the incident. *McMeakin v. Roofing & Sheet Metal Supply Co. of Tulsa*, 1990 OK CIV APP 128, 807 P.2d 288.[7]

In this case, as show above, Plaintiffs cannot establish that they suffered any physical injury as a result of the arsine release. *See* Material Fact No. 1. Without this evidence, Plaintiffs cannot recover for emotional distress as a matter of law.

## PROPOSITION V:

## PLAINTIFFS CANNOT MAKE A CLAIM FOR MEDICAL MONITORING.

Plaintiffs ask this Court to give the equitable remedy of on-going medical monitoring. *See* Complaint, ¶ 48, filed herein. The remedy of medical monitoring is not established in Oklahoma.[8] Even if it were, or even if this Court were to predict that such a remedy is available under Oklahoma law, Plaintiffs cannot meet the burden of establishing the right to medical monitoring because (1) they cannot establish the prerequisite physical injury, and (2) none of their expert witnesses have provided any expert opinions in support of medical monitoring. Accordingly, Summary Judgment should be granted in favor of Defendants on Plaintiffs' claim for medical monitoring.

---

[7]       *See also Van Hoy v. Oklahoma Coca Cola Bottling Co.*, 1951 OK 29, 235 P.2d 948 (man could not recover for emotional distress after seeing his friend become violently ill from drinking a Coke with a dead mouse in it); *Seidenbach's Inc. v. Williams*, 1961 OK 98, 361 P.2d 185 (bride could not recover for emotional distress when the defendant failed to deliver her wedding dress to the church on time).

[8]       No Oklahoma appellate court has recognized an independent cause of action for medical monitoring.

14

Plaintiffs must be able to show certain evidentiary requirements before they can obtain medical monitoring relief. Several jurisdictions impose the condition that Plaintiffs incurred a present, physical injury before they can seek the remedy of medical monitoring. *See, e.g., Henry v. Dow Chemical Co.*, 701 N.W.2d 684 (Mich. 2005); *Wood v. Wyeth-Ayerst Laboratories, Division of American Home Products, AH*, 82 S.W.3d 849 (Ky. 2002); *Hinton v. Monsanto Co.*, 813 So.2d 827 (Ala. 2001). As Plaintiffs themselves urged in their Complaint,[9] Plaintiffs must also prove: (1) that the plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant, (2) as a proximate result of exposure, the plaintiff suffered a significantly increased risk of contracting a serious latent disease, (3) that increased risk makes periodic diagnostic medical examinations reasonably necessary, and (4) monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial. *See, e.g, In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829 (3rd Cir. 1990); *Bocock v. Ashland Oil. Co.*, 819 F. Supp. 530 (S.D. W. Va. 1993); *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003).

***These elements must be proven by competent expert testimony***, *see, e.g., Paoli*, 916 F.2d at 837; *Redland Soccer Club, Inc. v. Department of the Army*, 548 Pa 178, 196, 696 A.2d 137, 146 (1997); *Meyer v. Lockformer Co.*, 2005 WL 1869656, at *3 (N.D. Ill. 2005), and Plaintiffs have no such evidence. Plaintiffs have no specific causation testimony to establish that they suffered physical injuries as a result of their alleged exposure to arsine, and Plaintiffs' experts have offered no opinions or testimony on any of the elements necessary to establish a basis for medical monitoring. *See* Material Fact

---

[9]      *See* Plaintiffs' Complaint, ¶ 48 (Docket #1).

No. 6. Accordingly, Plaintiffs' claims for medical monitoring must fail as a matter of law.

WHEREFORE Defendant Solkatronic Chemical, Inc. and Defendant Jeff R. Hannis request this Court to grant summary judgment in its favor, including all costs, attorneys' fees, and other relief this Court deems appropriate.

Respectfully submitted,

**RHODES, HIERONYMUS, JONES, TUCKER & GABLE, P.L.L.C.**

BY:  s/ Kerry R. Lewis
JOHN H. TUCKER, OBA #9110
ANDREW D. DOWNING, OBA #16414
KERRY R. LEWIS, OBA #16519
100 W. Fifth Street, Suite 400 (74103-4287)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:    918/582-1173
Facsimile:    918/592-3390

ATTORNEY FOR DEFENDANTS, AIR PRODUCTS AND CHEMICALS, INC. AND SOLKATRONIC CHEMICAL, INC.

16

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2006, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

**COUNSEL FOR PLAINTIFFS:**
Keith A. Ward
Fred E. Stoops
E. Diane Hinkle
RICHARDSON, STOOPS, RICHARDSON & WARD
6555 South Lewis, Suite 200
Tulsa, OK 74136-3414


s/Kerry R. Lewis
s/Kerry R. Lewis